**OCHS et al. v. EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES.**

**EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES v. OCHS et al.**

Nos. 12363, 12364.

Circuit Court of Appeals, Eighth Circuit.

Feb. 9, 1943.

Christy M. Farrar, of St. Louis, Mo., for Louis W. Ochs, Trustee.

James C. Jones, Jr., of St. Louis, Mo. (James C. Jones, of St. Louis, Mo., Moncure March, of New York City, and Jones, Hocker, Gladney & Grand, of St. Louis, Mo., on the brief), for Equitable Life Assur. Soc. of U. S.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal by the plaintiff and a cross-appeal by the defendant from a judgment entered in an accounting ordered by this court upon remand on a former appeal. The history of the transactions involved is related in detail in our opinion on the first appeal. See Ochs et al. v. Equitable Life Assurance Society of United States, 8 Cir., 111 F.2d 848. Only the facts necessary to understand the dispute arising on the accounting will be stated here.

The plaintiff Ochs is trustee and liquidating agent of Love, Bryan & Company, Inc., a dissolved corporation, hereinafter called the Company. The defendant is a life insurance company hereinafter called the Society. In 1925 the Company was engaged in loaning money, such loans being evidenced by notes or bonds of the borrower secured by mortgages and deeds of trust upon improved real estate in the city of St. Louis and in St. Louis County, Missouri. On August 15, 1925, the Company and the Society entered into an executory contract authorizing the Company to offer to sell and the Society to purchase, if it elected to do so, mortgage loans, and defining the conditions on which such loans would be purchased by the Society in case it accepted offers submitted

by the Company. The contract provided that the Society would pay only the principal amount of the loan purchased and the interest accrued at the date of the purchase.

During the negotiations preceding the execution of the contract an officer of the Society, on July 18, 1925, wrote a letter to the Company explaining "the class of loans that will be desired under our contract" and how the Company would obtain its profits and compensation for services from the borrower and not from the Society. The letter stated that "there are two ways in which correspondents collect their commission; one is by charging a commission over the rate [of interest] shown in the mortgage, and the other way is by selling the mortgage at par, charging no commission, and deducting the correspondent's commission from the rate of interest." In the latter case the loans were made to bear 6% interest and were sold to the Society at 5½%. The difference of ½% constituted the Company's commission and is referred to as an interest differential. Such loans were called lower rate loans, and in each case they were accompanied by a separate lower rate agreement which provided that the Company retained ownership in the interest differential.

The contract, executed August 15, 1925, nearly a month after the date of the letter, made no reference to the lower rate loans, but, as to commission loans, provided that the "commission charged the borrower * * * shall in no event exceed one per centum of the amount of the loan for each year for which the loan is made."

The reason for not specifically mentioning the lower rate loans in the contract was apparently due in part at least to the fact that in the beginning of their business relations in 1925 practically all loans sold to the Society were made on the commission plan. Beginning about 1926 a larger number of such loans were made on the lower rate plan, so that by 1928 lower rate loans aggregating approximately $3,500,000 had been purchased by the Society, each of which carried with it a separate lower rate agreement, and on which the interest differentials amounted to about $17,500 a year.

To avoid, for one reason, the necessity of making a separate contract with each lower rate loan sold by the Company to the Society the parties entered into an agreement on May 1, 1928, covering all lower rate loans thereafter sold to the Society and providing that "no other lower rate agreement shall be necessary." This agreement provided, also, that if any lower rate loans were thereafter sold to the Society the Company "shall have an interest therein for the difference between said rates", and that " * * * in consideration of the premises and of the sum of One Dollar by each to the other in hand paid, receipt whereof is hereby acknowledged, the parties hereto mutually covenant and agree that whenever said party of the first part shall sell to the said party of the second part any mortgage loan at a lower rate of interest than is provided for in the bond or note and mortgage or trust deed securing the same said party of the first part shall have an interest in said mortgage loan for the difference in said rates which shall be payable to said party of the first part as, if and when collected."

After the execution of the contract of May 1, 1928, separate lower rate agreements were no longer made with each such loan sold and purchased.

The thirteenth paragraph of the contract of August 15, 1925, provided for the termination and cancellation of the contract by either party upon written notice. In case of termination the Company agreed, if requested so to do, to perform the duties imposed upon it by paragraph eighth.

The eighth paragraph of the contract provided, among other things, that the Company should service all loans sold to the Society, that is, that the Company should collect interest and remit it to the Society, check insurance on the buildings covered by the mortgages, the payment of taxes, etc.

On November 18, 1929, the Society gave notice of cancellation of the contract and of all amendments thereto, requesting the Company to service the loans until further notice. Such servicing of the loans by the Company was discontinued on April 30, 1930.

The dispute between the parties in this litigation relates to the effect of the cancellation of the contract upon the rights of the Company in the interest differentials provided for in the lower rate loans sold to the Society. The Company received the differentials on outstanding loans up to April 30, 1930, the date on which the Society took over the servicing of such loans and thereafter collected the interest differentials from the borrowers. The

Company brought this suit to recover such differentials on all lower rate loans outstanding if and when collected "during the existence and life of said loans." The right of recovery was denied by the Society in reliance upon a clause in the supplemental contract of May 1, 1928, providing that

"It Is Further Understood and Agreed That in case said contract between the parties hereto dated August 15, 1925, is cancelled all the right, title and interest of the party of the first part hereunder in and to any mortgage loans purchased at a lower rate shall be terminated thereby.

\* \* \* \* \* \* \*

"It Is Further Understood and Agreed that all loans heretofore purchased under said contract at a lower rate shall also be subject to the terms of this agreement. \* \* \*"

The trial court sustained the contention of the Society and denied recovery. On appeal this court held that the lower court correctly determined the rights of the parties to lower rate loans sold to the Society after May 1, 1928; that all such loans were subject to the provisions of the contract of that date; but, referring to the second clause of the contract of May 1, 1928, quoted supra, this court said [111 F. 2d 853]: "If this paragraph undertakes to terminate the interest of Love, Bryan & Co. in and to any mortgage loans purchased at a lower rate, prior to May 1, 1928, in which the rights of the parties had been fixed by special agreement, executed in the form prescribed by the Society itself, it is void for want of adequate consideration"; and the case was remanded for an accounting for all interest differentials on lower rate loans accruing from transactions consummated prior to May 1, 1928.

On the accounting the dispute involves interest differentials only on lower rate loans consummated prior to May 1, 1928, and extended or renewed thereafter. The Society refused to account for such differentials accruing after time of payment had been extended. The trial court held that the Company is entitled to the interest differentials on all renewals made between May 1, 1928, and November 18, 1929, and that it is not entitled to such differentials on renewals made after November 18, 1929, the date of the cancellation of the contract. The Company has appealed from that part of the decree denying it recovery of the interest differentials on renewals made after November 18, 1929, and the Society from that part of the decree requiring it to account for such differentials on renewals made between May 1, 1928, and November 18, 1929.

On this appeal the Society contends (1) that the renewal or extension of a mortgage loan upon its maturity is a new loan, and (2) that the renewal after May 1, 1928, of a loan made prior to that date, since it is a new loan is subject to that clause of the contract of May 1, 1928, supra, providing that in case the contract of "August 15, 1925, is cancelled, all the right, title and interest of the party of the first part hereunder in and to any mortgage loans purchased at a lower rate shall be terminated thereby." It is pointed out in the opinion of this court on the former appeal the court said that "both parties were bound by the terms of these agreements [of August 15, 1925, and May 1, 1928,] with respect to all loans purchased after May 1, 1928"; and it is argued that a renewal made after May 1, 1928, is in the same category as a loan purchased after that date.

The plaintiff contends that as between the parties a renewal or extension of a loan is not, within the meaning of the contracts and the former decision of this court, a new loan; that a lower rate loan sold to the Society prior to May 1, 1928, is, within the meaning of these instruments, a continuing loan until it is paid; and that the Company has a vested legal right to the interest differentials in such loans until they are paid.

Although a separate lower rate agreement was executed in connection with each separate lower rate loan purchased by the Society prior to May 1, 1928, it is clear that the parties contemplated that the purchase and sale of such loans should be subject to the provisions of the contract of August 15, 1925, so far as applicable and where the two contracts are not in conflict. This is shown by the first paragraph of the letter of July 18, 1925, from an officer of the Society to the Company, supra; by a clause in the separate agreements making the August 15, 1925, contract specifically applicable to amortized loans; and by the fact that the parties construed the provisions of the August 15, 1925, contract relating to the obligation of the Company to service all loans as applicable to the lower rate loans.

The contract of August 15, 1925, provided that on the expiration of any loan pur-

chased by the Society, "if this contract shall then be in full force and effect", the Company shall have the sole right to arrange with the borrower for an extension or renewal. The contract of May 1, 1928, gave the Society the right to release, extend or foreclose mortgages, as owner, and provided that in case it exercised such right it should be liable to the Company "only for an accounting * * * for money actually received in excess of the ownership" of the Society in the notes and mortgages.

It was also provided by the contract of August 15, 1925, "that all loans so extended shall be considered as new loans and subject to all the covenants, conditions and agreements contained in this contract in the same manner and to the same effect as if they had just been purchased." This same contract also provided "That if this contract shall have been terminated and cancelled * * * all rights to renewals hereunder shall be terminated also and the said Society shall have the right to renew such loans as may expire after such termination."

■ The principles controlling our decision on the former appeal are applicable to the situation presented in respect of renewals on this appeal. Renewals made after the termination of the contract of November 18, 1929, must "be considered as new loans * * * as if they had just been purchased", and the plaintiff has no right to interest differentials accruing on such loans. The Company agreed to this arrangement in the contract of August 15, 1925, prior to the sale of any lower rate loans to the Society, and it is bound by these stipulations. No rights of the Company "had been fixed by special agreement" or otherwise in these loans beyond their maturity as provided in the extension agreements with the borrowers existing on November 18, 1929.

■ The district court regarded renewals made between May 1, 1928, and the date of cancellation of the contract on November 18, 1929, as in a class different from renewals made after cancellation, and held that plaintiffs are entitled to interest differentials on such renewals until the date of their maturity subsequent to cancellation.

As we have pointed out supra, the contract of August 15, 1925, was a part of the contracts of purchase made prior to May 1, 1928, and the contract of May 1, 1928, was a part of all contracts of purchase

made subsequently. In our former opinion we said: "The amendment of May 1, 1928, was merely a modification of the agreement of August 15, 1925, and contained an additional condition to the acceptance of loans by the Society. It applied to future business and could have no effect upon past transactions in which the rights of the parties had been finally and legally determined. * * * We think both parties were bound by the terms of these agreements with respect to all loans purchased after May 1, 1928."

All renewals of loans made after May 1, 1928, constituted "new business" within the meaning of the language quoted and of the contracts defining the conditions under which the parties acted. The contract of August 15, 1925, expressly provided that renewals should be regarded as "new loans * * * as if they had just been purchased." The conclusion is inescapable, as shown supra, that the parties intended and construed that contract to be applicable to lower rate loans from the beginning of business in 1925.

The provisions of the contract of August 15, 1925, and the supplemental agreement of May 1, 1928, were conditions attaching to and becoming a part of every purchase and sale of loans made thereunder. Since renewals made after May 1, 1928, as well as those made prior thereto, were by the express terms of the contract to be considered as new loans, all such renewals were subject to the condition that cancellation of the contract would terminate the Company's right to interest differentials in such renewals.

In our former opinion we held that the supplemental agreement of May 1, 1928, did not invalidate the separate lower rate contracts made before that date, because there was no consideration provided for the surrender of those vested rights. The question of renewals was not then under consideration; but the provision that renewals should be regarded as new loans was at that time embodied in the contract of August 15, 1925, and renewals made after that date were subject to the same conditions as were all new loans.

Cancellation of the contract on November 18, 1929, effective April 30, 1930, terminated from the latter date the right of the company to interest differentials on lower rate loans renewed after May 1, 1928. The contract so provided and the court cannot amend it.

For the reasons stated the judgment appealed from is affirmed on the plaintiffs' appeal and reversed on the defendant's cross-appeal.